# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

## FLORENCE DIVISION

| | |
|---|---|
| John Christopher Smith, ) | C/A No.: |
| ) | |
| Plaintiff, ) | |
| v. ) | **COMPLAINT** |
| ) | (Jury Trial Demanded) |
| Ernest J. Edwards, individually, ) | |
| Bobby Paul Edwards, individually, and ) | |
| Half Moon Foods, Inc., d/b/a J&J Cafeteria, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff John Christopher Smith, by and through his undersigned counsel, complaining of Defendants Half Moon Foods, Inc., d/b/a J&J Cafeteria, Ernest J. Edwards, individually, and Bobby Paul Edwards, individually, alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and personal jurisdiction over the parties.

2. Plaintiff John Christopher Smith (hereinafter "Plaintiff") brings this action on his own behalf arising out of the Federal and State causes of action more specifically pled below.

3. Plaintiff is now and at all times has been a Citizen of the United States. He is a resident of the State of South Carolina.

4. Upon information and belief, Defendant Half Moon Foods, Inc., d/b/a J&J Cafeteria (hereinafter "Defendant Cafeteria") is a for-profit corporation organized under the laws of the State of South Carolina and located at 1303 4th Ave., Conway, South Carolina. This is within Horry County.

1

5. Upon information and belief, Defendant Bobby Paul Edwards (hereinafter "Defendant Bobby") resides within Horry County, South Carolina.

6. Upon information and belief, Defendant Ernest J. Edwards (hereinafter "Defendant Ernest") resides within Horry County, South Carolina.

7. Upon information and belief, Defendant Ernest along with his brother Defendant Bobby owns Defendant Cafeteria. Defendant Bobby is the manager of Defendant Cafeteria.

8. All of the events or omissions giving rise to these claims occurred within the City of Conway, Horry County, South Carolina.

9. Venue is proper under 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

10. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

11. Plaintiff is an African American man who was formerly employed at J&J Cafeteria located in Conway, South Carolina. Plaintiff is mentally handicapped with mild cognitive impairment.

12. For more than four years, Plaintiff lived in an apartment located at 319 Beatty Street, Conway, South Carolina, which is directly behind Defendant Cafeteria.

13. Defendant Bobby is a white man of non-Hispanic origin.

14. Defendant Ernest is a white man of non-Hispanic origin.

15. Upon information and belief, Defendant Cafeteria is a restaurant business employing at least five or more persons during the previous twelve months.

16. Plaintiff worked at the Defendant Cafeteria for the past twenty-three years approximately.

17. Defendant Bobby took over management of Defendant Cafeteria within the last five years approximately. The abuse of Plaintiff began after Defendant Bobby took over.

18. Plaintiff worked from the time Defendant Cafeteria opened at 6:00AM until after Defendant Cafeteria closed and was cleaned, ending between 12:30AM and 1:30AM. Plaintiff worked these grueling hours at least six days each week. Plaintiff worked from approximately 6:00AM until 5:00PM on each Sunday. Plaintiff was not given any breaks during his approximately eighteen hour shifts. Plaintiff was not given any vacation time or days off of work. Plaintiff was not given any benefits, such as health insurance, dental care, or retirement planning.

19. Defendant Cafeteria did not pay Plaintiff for the hours that he worked. Defendant Bobby indicated to Plaintiff that he maintained a separate bank account at his personal bank for the benefit of Plaintiff. Defendant Bobby represented that Plaintiff's bank account possessed more than $30,000.00. Plaintiff has not been paid that money or given access to such an account.

20. Plaintiff lived in an apartment directly behind Defendant Cafeteria. Defendant Bobby owns and manages the apartment building in which Plaintiff resided at the time of employment at Defendant Cafeteria. Plaintiff lived in what can best be described as squalor. Plaintiff's apartment was overrun with a cockroach infestation. Defendant Bobby forced Plaintiff to live in sub-human condition that were deplorable and harmful to human health.

21. While Plaintiff was working for Defendant Bobby at Defendant Cafeteria, Defendant Bobby repeatedly subjected Plaintiff to physical, emotional, and mental abuse. The abuse began in 2010 and continued until the day Plaintiff was rescued by South Carolina Department of Social Services on October 10, 2014. Defendant Bobby threatened that he

would have Plaintiff arrested if Plaintiff ever reported what was happening at Defendant Cafeteria.

22. Defendant Bobby continually and repeatedly threatened severe physical harm to Plaintiff. Defendant Bobby told Plaintiff that he would stomp Plaintiff's throat. Defendant Bobby told Plaintiff that he would beat Plaintiff until people would not recognize him and that he would beat Plaintiff's brains out of his head. The threats coupled with the actual physical abuse caused Plaintiff to fear Defendants such that he felt coming forward would be fruitless and only cause Plaintiff to suffer more aggravated abuse or even death.

23. Defendant Bobby repeatedly and habitually called Plaintiff the "N" word, derogatorily referring to Plaintiff's race.

24. Defendant Bobby repeatedly and habitually inflicted physical harm on Plaintiff. Defendant Bobby hit Plaintiff in the head with a frying pan. Defendant Bobby beat Plaintiff with a spatula, belts, a belt-buckle, and his fists. Defendant Bobby burned Plaintiff by putting tongs into hot frying grease and then touching those hot tongs to Plaintiff's neck and exposed skin. Plaintiff has scarring that corroborates the physical abuse that he sustained.

25. Defendant Bobby would physically restrain Plaintiff to the premises of Defendant Cafeteria and force him to labor and work, even on occasions where Plaintiff was sick and weakened to the point he had to be carried home and physically fed drink and food. Defendant Bobby would move Plaintiff into the freezer, cold locker, back office or other part of Defendant Cafeteria to commit acts of physical abuse on Plaintiff. Plaintiff was forced to move to these areas under fear of severe physical harm and threats of severe abuse.

26. Multiple witnesses, to be identified at a later date for the sake of their privacy, observed multiple occasions of Defendant Bobby subjecting Plaintiff to physical, emotional, and

4

mental abuse. On one occasion, Defendant Bobby hit Plaintiff with a butcher knife. On a separate occasion, Defendant Bobby took Plaintiff into the back and beat him with a belt buckle, because Defendant Bobby was displeased with the speed at which Plaintiff was able to replenish the food at the buffet within Defendant Cafeteria. Plaintiff was heard crying like a child and yelling, "No, Bobby, please!" After this beating, Defendant Bobby forced Plaintiff to get back to work at Defendant Cafeteria.

27. Witnesses of the physical, mental, and emotional abuse imposed on Plaintiff by Defendant Bobby called and informed Defendant Ernest, the owner of Defendant Cafeteria, about the abuse. Defendant Ernest was informed about the abuse of Plaintiff on at least two occasions.

28. As owner of Defendant Cafeteria, Defendant Ernest had the power and authority to control the actions of Defendant Bobby, the manager of Defendant Cafeteria. However, Defendant Ernest consciously chose to ignore the abuse and allowed his brother to continue to violate the rights of Plaintiff.

29. Plaintiff was forced to work by Defendant Cafeteria and Defendant Bobby under the threat of physical violence and harm. Plaintiff was forced to work and labor through the use of actual physical violence and harm.

30. Defendant Bobby isolated Plaintiff from his family members and prevented them from being able to visit Plaintiff through lies and deceit.

31. On October 10, 2014, Conway Police Officers responded to Defendant Cafeteria in reference to a Department of Social Services ("DSS") escort. Police officers met with the complaining DSS representatives who stated they had received a concerned citizen's report from the South Carolina Governor's Office that a vulnerable adult was being abused at

Defendant Cafeteria. At Defendant Cafeteria, DSS representatives confirmed the abuse and viewed scars on Plaintiff's back inflicted by Defendant Bobby. Plaintiff was rescued from Defendants at that time and placed in Adult Protective Services with the Department of Social Services.

32. After his rescue from Defendant Cafeteria, Plaintiff sought unemployment compensation with the assistance of the Department of Social Services. However, Plaintiff was denied unemployment compensation, because Defendant Cafeteria did not report the amount of wages actually earned by Plaintiff. Despite the fact that Plaintiff worked seven days each week for approximately eighteen-hour shifts, Defendant Cafeteria reported Standard Base Period Quarterly Earnings of:

    a. $449.50 earned in the third quarter of 2013;

    b. $862.75 earned in the fourth quarter of 2013;

    c. $964.25 earned in the first quarter of 2014; and

    d. $565.50 earned in the second quarter of 2014.

The amount of wages reported by Defendants on behalf of Plaintiff fraudulently and grossly misrepresents the amount of wages actually earned by Plaintiff while employed at Defendant Cafeteria.

## COUNT ONE - SLAVERY
**(Violation of 18 U.S.C. § 1589 – Forced Labor)**
**As to All Defendants**

33. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

34. Defendants knowingly obtained the labor and services of Plaintiff by means of force, threats of force, and/or physical restraint.

35. Defendants knowingly obtained the labor and services of Plaintiff by means of serious harm and threats of serious harm to Plaintiff.

36. Defendants knowingly obtained the labor and services of Plaintiff by means of a scheme, plan, or pattern intended to cause Plaintiff to believe that, if he did not perform such labor or services, Plaintiff would suffer serious harm or physical restraint.

37. Wherefore Plaintiff seeks relief provided for in 18 U.S.C. § 1595, wherein "an individual who is a victim on a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) . . . and may recover damages and reasonable attorney's fees." Peonage, Slavery, and Trafficking in Persons, 18 U.S.C. § 1595 (2015).

38. Plaintiff prays for any further such relief provided for by law, including emotional pain and suffering, physical pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

39. Plaintiff prays for any other such relief provided for by law or equity.

### COUNT TWO - RACE DISCRIMINATION
### (Violation of 42 U.S.C. § 1981 – Intentional Employment Discrimination)
### As to All Defendants

40. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

41. Defendants discriminated against Plaintiff because of his race by creating and maintaining a hostile work environment and subjecting Plaintiff to racially motivated harassment.

42. Defendant Ernest and Defendant Bobby are white, Caucasian males of non-Hispanic descent.

43. Plaintiff is an African American man who was employed by Defendants.

44. Defendant Bobby repeatedly and habitually referred to Plaintiff and addressed Plaintiff using the "N" word to derogatorily denote Plaintiff's race.

45. While employed at Defendant Cafeteria, Plaintiff suffered racially motivated physical, emotional, and mental abuse at the hands of Defendant Bobby and under the ownership and supervision of Defendant Ernest. Defendant Ernest is responsible and liable under Respondeat Superior.

46. No white or Caucasian employees were subjected to the abuse described herein.

47. Plaintiff was not paid a fair wage for his labor and services by Defendants. Plaintiff's pay was withheld and controlled by Defendants. Plaintiff was not given access to any money supposedly paid to Plaintiff and held in a separate account by Defendant Ernest.

48. No white employees of Defendants were restricted from the wages that they earned.

49. Plaintiff was rescued from Defendants' abuse on October 10, 2014, by the South Carolina Department of Social Services with the assistance of the Conway Police Department. No reasonable person would have continued to subject themselves to the continued abuse by Defendants.

50. Defendants subjected Plaintiff to the above-described inhumane treatment due to his race.

51. Defendants' actions and/or omissions were done with malice or reckless indifference to Plaintiff's federally protected rights. Because of their actions, Defendants are subject to punitive damages.

52. In addition to punitive damages, Defendants are liable for compensatory damages suffered by Plaintiff, including back pay, lost wages, benefits, and increases in salary and benefits that Plaintiff would have been had he not been discriminated against. Defendants are also liable for front pay to Plaintiff for any future wages and benefits that Plaintiff would have

earned had he not been discriminated against. The claim for back pay extends back to the point in time that Plaintiff began working for Defendants until his rescue on October 10, 2014. The claim for future pay extends through a reasonable time in the future to be determined by a jury. Plaintiff's claims for back pay are not limited due to equitable tolling wherein, Plaintiff was prevented from asserting his claims by Defendants actions and abuse.

53. Plaintiff prays for any further such relief provided for by law, including emotional pain and suffering, physical pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

54. Plaintiff prays for any other such relief provided for by law or equity.

### COUNT THREE - DISABILITY DISCRIMINATION
**(Violation of 42 U.S.C. § 12112 – Intentional Employment Discrimination)**
**As to All Defendants**

55. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

56. Plaintiff is mentally handicapped with mild cognitive impairment.

57. Defendants knowingly and intentionally subjected Plaintiff to the above described harassment and discrimination on the basis of Plaintiff's mental handicap and disability.

58. Defendants' disability discrimination against Plaintiff included disparate treatment, harassment, disparate wage pay, and withholding other benefits enjoyed by employees of Defendants.

59. Defendants withheld pay and did not pay Plaintiff for his labor and services taking advantage of his mental handicap and preying on Plaintiff as a vulnerable adult.

60. Plaintiff prays for actual, compensatory, and punitive damages provided for by 42 U.S.C. § 1981a and any other relief in law or equity the court may deem appropriate.

**COUNT FOUR - FAIR LABOR STANDARDS ACT**
**(Violation of 29 U.S.C. § 201, et. seq.)**
**As to All Defendants**

61. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

62. Plaintiff was not paid a minimum wage as specified and controlled by 29 U.S.C. § 206 (2015). Plaintiff was paid an approximate yearly wage of $2,842.00. Plaintiff's wages paid fall far below the federal minimum wage of $7.25 per hour.

63. Plaintiff was not paid overtime pay for the overtime hours that Plaintiff worked as specified and controlled by 29 U.S.C. § 207 (2015). Plaintiff is owed and due for one and a half times the normal hourly rate for all hours Plaintiff worked longer than forty hours in any single work week. Plaintiff worked more than ninety hours each week on average.

64. Plaintiff prays for all relief provided for by law, including back pay, back overtime pay, liquidated damages in an amount equal to the total sum of back pay and back overtime pay, in addition to costs and reasonable attorney's fees. 29 U.S.C. § 216 (2015). Plaintiff also prays for punitive damages due to the intentional and egregious violation of the Act.

65. Because Plaintiff was severely beaten, subjected to repeated threats of physical harm, subjected to threats of abuse of law enforcement process, and other wanton and malicious acts at the hands of Defendants and with the purpose and intent of causing Plaintiff fear in an attempt to force Plaintiff's silence, any limitation on damages and claims should be equitably tolled against all Defendants.

**COUNT FIVE - SOUTH CAROLINA PAYMENT OF WAGES ACT**
**(Violation of S.C. Code Ann. § 41-10-10, et. seq.)**
**As to Defendant Cafeteria**

66. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

67. Plaintiff was an employee of Defendant Cafeteria since he was approximately twelve years old. Plaintiff was an adult employee of Defendant Cafeteria at least from 2010 until his rescue on October 10, 2014.

68. Defendant Cafeteria is an employer within the meaning of the Act, employing at least five persons during the previous twelve months.

69. Plaintiff worked seven days per week for approximately eighteen-hour shifts. Plaintiff accrued overtime pay that was due at the rate of one and one-half times the regular rate of payment. Plaintiff has never been paid any overtime pay earned and due.

70. Defendants reported wages of less than $1,000.00 per quarter for each quarter during the years of 2013 and 2014. The total wages reported for the year beginning in the third quarter of 2013 until the second quarter of 2014 (four consecutive quarters) amounted to only $2,842.00.

71. Plaintiff earned far more than the $2,842.00 that was reported by Defendants as wages. Defendants have not paid Plaintiff the wages he actually earned for the hours he actually worked. These unpaid wages are due and owing to Plaintiff. The amount of wages reported falls far below the federal minimum wage.

72. Pursuant to the South Carolina Payment of Wages Act, Plaintiff seeks recovery wherein "the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow." S.C. Code Ann. § 41-10-80 (2015).

73. Because Plaintiff was severely beaten, subjected to repeated threats of physical harm, subjected to threats of abuse of law enforcement process, and other wanton and malicious acts at the hands of Defendants and with the purpose and intent of causing Plaintiff fear in

an attempt to force Plaintiff's silence, any limitation on damages and claims should be equitably tolled against all Defendants.

### COUNTS SIX and SEVEN - NEGLIGENCE and NEGLIGENT HIRING/ SUPERVISION
(Common Law)
As to Defendant Ernest and Defendant Cafeteria

74. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

75. Defendants owed a duty to Plaintiff to not violate Plaintiff's rights or subject him to physical, emotional, or mental harm during his employment with Defendants. Defendants breached that duty by allowing Defendant Bobby to abuse Plaintiff as described fully above. Defendant's breach of duty proximately caused Plaintiff's damages.

76. Defendant Cafeteria and Defendant Ernest knew or should have known that Defendant Bobby was repeatedly subjecting Plaintiff to physical, emotional, and mental abuse in violation of State and Federal laws.

77. Defendants Cafeteria and Ernest knew or should have known that Defendant Bobby created an undue risk to the public and specifically Plaintiff.

78. Defendant Bobby is the biological brother of Defendant Ernest.

79. Defendant Ernest along with Defendant Bobby own the Defendant Cafeteria restaurant.

80. Defendant Ernest lived in the Myrtle Beach area within reasonable proximity to the Defendant Cafeteria restaurant in Conway.

81. Defendant Ernest would "check in" and supervise the operation of Defendant Cafeteria.

82. Witnesses of the mental, emotion, and physical abuse suffered by Plaintiff at the hands of Defendant Bobby reported the abuse to Defendant Ernest on multiple occasions.

83. Despite being armed with actual knowledge of the abuse, Defendants Cafeteria and Ernest continued to employ Defendant Bobby. These Defendants took no action whatsoever to

stop the known abuse or to prevent any further abuse of Plaintiff. Defendants knowingly disregarded the possible and actual harm being caused by Defendant Bobby.

84. Defendants Cafeteria and Ernest failed to reasonably supervise Defendant Bobby. Defendants also failed to train Defendant Bobby. As a proximate result of Defendants' acts and omissions, Defendant Bobby was able to and did violate the Plaintiff's rights.

85. In the face of actual knowledge of the ongoing abuse, the actions and omissions by Defendants constitute gross negligence, willful, wanton, and reckless disregard for the violations of Plaintiff's rights and harms being committed by Defendant Bobby.

86. Defendants are liable for actual, compensatory, and punitive damages proximately caused by the above described negligent supervision.

### COUNTS EIGHT and NINE - ASSAULT and BATTERY
### (Common Law)
### As to All Defendants

87. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

88. Through the above described acts, Defendant Bobby did intentionally create a reasonable apprehension or fear of immediate bodily harm in Plaintiff. Defendant Bobby's actions, including the above described threats, were intended to create an ongoing fear of imminent and immediate bodily harm. The above-described actions did create an actual fear of immediate bodily harm within the Plaintiff and would have cause the same fear in a reasonable or ordinary person.

89. Through the above described acts, Defendant Bobby did intentionally commit a harmful touching. Among other examples of battery, Defendant beat Plaintiff with a belt and burned his neck and back with hot grease on tongs.

90. Defendants' actions did proximately cause severe physical, emotional, and mental pain and suffering on Plaintiff. Defendants are liable for actual, consequential, and punitive damages proximately resulting from these intentional acts.

### COUNT TEN - FALSE IMPRISONMENT
(Common Law)
As to All Defendants

91. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

92. Defendants, including Defendant Bobby, did intentionally and unlawfully restrain Plaintiff against his will. Defendant Bobby prevented Plaintiff from leaving Defendant Cafeteria through threats of violence. Defendant Bobby moved Plaintiff within Defendant Cafeteria under threats of violence in order to commit acts of physical abuse out of sight of restaurant patrons.

93. Defendants are liable for all humiliation, indignity, and mental suffering proximately resulting from the false imprisonment of Plaintiff. Defendants' intentional acts subject Defendants to punitive damages. Plaintiff prays for any other such relief the Court may deem appropriate.

### COUNT ELEVEN – "OUTRAGE" /
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Common Law)
As to All Defendants

94. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

95. Defendants intentionally and/or recklessly inflicted severe emotional distress though acts of ongoing abuse so extreme and outrageous as to exceed all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

96. Defendants' intentional acts caused Plaintiff to suffer severe emotional distress such that no reasonable man could be expected to endure it. Plaintiff did suffer and continues to

suffer from emotional distress and mental anguish proximately caused by Defendants' conduct and abuse.

97. Defendants are liable for all actual, consequential, and punitive damages proximately resulting from Defendants' intentional conduct.

### COUNT TWELVE - CONVERSION
### (Common Law)
### As to All Defendants

98. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

99. During the course of Plaintiff's employment with Defendant Cafeteria and by Defendants Ernest and Bobby, Defendants took unauthorized assumption and ownership over checks and monies belonging to and owing to Plaintiff, to the alteration of their condition or exclusion of Plaintiff's rights.

100. Defendant Bobby took and deposited Plaintiff's checks into a separate bank account denying Plaintiff access to or control of that account.

101. Plaintiff prays for repayment of all monies and U.C.C. instruments converted in addition to reasonable interest on those converted instruments.

102. Plaintiff also prays for all consequential damages proximately resulting from Defendants' conversion, as well as punitive damages for the willful, wanton, and reckless indifference to Plaintiff's ownership rights of his paychecks.

### COUNT THIRTEEN - FRAUDULENT MISREPRESENTATION
### (Common Law)
### As to All Defendants

103. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

104. Defendants intentionally, consciously, and fraudulently misrepresented to Plaintiff that Plaintiff's wages were being paid and held for his benefit in a separate account for Plaintiff.

105. Defendants' misrepresentation was made intending to induce Plaintiff's reliance on that representation in an effort to allow Defendants to continue to unlawfully and wrongly withhold wages from Plaintiff.

106. Plaintiff actually and reasonably relied on Defendants' representations to his detriment. Only a small fraction of Plaintiff's wages earned were actually reported and Plaintiff was denied unemployment compensation when he was rescued from Defendants by Department of Social Services.

107. Upon information and belief, no actual separate bank account was created for Plaintiff's benefit. Defendants were able to convert and steal significant sums of money from wages earned and due to Plaintiff over the course of his employment for several years. Defendants were also able to benefit from essentially free labor provided by Plaintiff based on his reliance that Defendants were maintaining his wages earned in an account for his benefit. During this time, Plaintiff could have been earning an actual, fair wage, but reasonably relied on the representations and falsehoods made by Defendants.

108. Plaintiff prays for all compensatory damages, placing Plaintiff in the position he would have been had he not been defrauded. Plaintiff also prays for all punitive damages provided for in tort by Defendants' reckless and/ or intentional acts.

**COUNT FOURTEEN - RESPONDEAT SUPERIOR**
**(Common Law)**
**As to All Defendants**

109. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

110. Defendants Cafeteria and Ernest are vicariously liable for all acts and omissions by Defendant Bobby. All abuse suffered by Plaintiff was during the course of his employment at Defendant Cafeteria and inflicted by Defendant Bobby during the course of Defendant's

management and operation of the restaurant business. All acts and omissions by Defendant Bobby were performed in the scope of his employment with Defendant Cafeteria and Defendant Ernest. Defendant Ernest knew or reasonably should have known about all of the conduct by Defendant Bobby, and Defendant Ernest ratified all conduct.

111. As owner of Defendant Cafeteria and employing Defendant Bobby, Defendant Ernest possessed the right to exercise control, method of payment, furnishing equipment, and to fire Defendant Bobby. As such a master-servant relationship existed at all times relevant to the acts or omissions herein described.

## **CONCLUSION**

THEREFORE, as a direct and proximate cause of the above referenced acts of Defendants as alleged herein, Plaintiff sought medical treatment, suffered, and continues to suffer from one or more of the following elements of damage:

    a. Physical pain and suffering;

    b. Mental anguish;

    c. Emotional distress;

    d. Impairment of health and bodily efficiency;

    e. Loss of sleep and inability to concentrate;

    f. Loss of Plaintiff's enjoyment of life;

    g. Shock and injury to Plaintiff's nerves and nervous system;

    h. Increased susceptibility to future injury;

    i. Substantial expenses for medical services;

    j. Future medical care;

    k. Expenses for transportation to and from medical services;

    l. Loss of income;

    m. Lost wages, including back pay, back overtime pay, and front pay;

    n. Interest lost from unpaid wages and converted instruments and money;

    o. And any and all other damages provided for by law not specifically named herein.

Due to the willful, wanton, reckless, grossly negligent, and negligent acts and omissions of Defendants, Plaintiff is entitled to recover actual and punitive damages as determined by a jury.

WHEREFORE, Plaintiff prays for a trial by jury and for the following:

    i. Judgement against all Defendants for actual and punitive damages in an amount to be determined by the jury;

    ii. For costs of this action;

    iii. For reasonable attorney's fees; and

    iv. For such other relief as this court deems just and proper.

**REST OF PAGE LEFT INTENTIONALLY BLANK**

                    **McLeod Law Group, LLC**
                    3 Morris Street (29403)
                    PO Box 21624
                    Charleston, South Carolina 29413
                    P: 843-277-6655 F: 843-277-6660

                    <u>/s/ W. Mullins McLeod, Jr.</u>
                    W. Mullins McLeod, Jr.
                    Fed ID No.: 7142
                    Michael Thomas Cooper
                    Fed ID No.:12198
                    D. Ellis Roberts
                    Fed ID No. 11467


                    **DAVID AYLOR LAW OFFICES**
                    24 Broad Street
                    Charleston, SC 29401

                    <u>/s/ David Aylor</u>
                    David Aylor,
                    Fed ID No.: 10343


                    Attorneys for the Plaintiff

November 16, 2015
Charleston, South Carolina